## Indemnity Claims for Cattle

SHULL, Deputy Attorney General, October 5, 1933.—You have made request to be advised on the answers to five questions which you have propounded relative to the payment of indemnity claims for cattle which have been tested and have reacted to the tuberculin test. These will be answered seriatim as presented.

1. Can indemnity be paid for tubercular reactors which die before being appraised? (You direct our attention to section 3 of the Act of June 22, 1931, P. L. 682.)

The Act of June 22, 1931, P. L. 682, relates to the appraisement of animals when about to be slaughtered to prevent the spread of disease, and regulates payments by the Commonwealth in such cases and the payment of salvage by butchers.

The keynote in the construction of this act is found in its title and in the body of the act in six words, viz., "to prevent the spread of disease".

The Commonwealth, through its agents and officers, may assume the burden of payment only when acting to prevent the spread of disease destructive to herds. Section 2 of the act provides:

"The Commonwealth hereby agrees to compensate owners of domestic animals slaughtered to prevent the spread of disease. . . ."

The same language is used in the Act of July 22, 1913, P. L. 928, which was construed by Deputy Attorney General George Ross Hull, in Opinions of the Attorney General, 1921-1922, page 218, wherein it is said:

"It is clear from this provision that indemnities are to be paid only where the Bureau has caused the animals to be killed. . . ."

It is not within the contemplation of the act that the Commonwealth shall pay indemnity to the unfortunate individual who possesses cattle that have become affected with any disease. It comes to the rescue only when a disease which is transmissible is likely to become a menace to other herds of cattle within the Commonwealth. Then it devolves on the Commonwealth to compensate the owners for the animals which have been directed to be destroyed to prevent the spread of disease. Should the animal be so located that disease from it could not spread, the State officers have nothing to do with it.

Again, it appears in section 3 of the Act of 1931, supra:

"Whenever, to prevent the spread of disease, an authorized officer or agent of the Department of Agriculture may deem it necessary to order any domestic animal to be slaughtered, the animal shall be appraised before being slaughtered. . . ."

Section 4 provides:

"An animal that has been appraised under this act shall be disposed of by the owner in accordance with the laws of this Commonwealth and the rules and regulations adopted by the Department of Agriculture."

The rules and regulations which are here authorized are necessarily to be made in conformity with that which is expressed in the act, and the purpose of the act is to prevent the spread of disease. If an animal dies from having been gored by another animal or crushed by a fallen barn, the fact that it is tubercular or affected with a transmissible disease would not justify payment for it by the Department of Agriculture. Each and every requirement of the act must be fully met. Disease must be made to appear by examination, which is followed by condemnation, appraisement, slaughter directed, and the slaughter of the animal performed. These are all for the purpose of preventing the spread of disease.

Therefore, we advise that no indemnity may be paid for reactors which die before being appraised.

2. Can indemnity be paid for tubercular reactors which die a natural death through no act of the Commonwealth of Pennsylvania, after appraisal on the premises of the owner, where the carcass has not been destroyed or disposed of under supervision of a Bureau of Animal Industry agent, in accordance with section 20 of the Act of July 22, 1913, P. L. 928?

The Act of 1913, supra, was enacted, inter alia, for the purpose of preventing, controlling, and eradicating transmissible diseases. Section 20 provides:

"Whenever it shall be required to destroy or dispose of the carcass of any animal to prevent the spread of disease, such destruction or disposal shall be made by one of the following methods:

"First. Complete cremation of the entire carcass . . .

"Second. Boiling the carcass . . .

"Third. Burial of the carcass . . . in such place that shall not be subjected to overflow from ponds or streams . . ."

This has nothing to do with payment of indemnity to persons, but relates to destruction of the carcasses in a manner that will prevent the spread of disease. When the animal is dead, the statute speaks of it as a carcass. There is no appraisal to be made of a carcass. Dead animals are not directed to be slaughtered, and therefore do not come within the scope of this section of the statute. Necessarily, we must conclude and advise that there can be no indemnity paid.

3. Can indemnity be paid for tubercular reactors which die a natural death through no act of the Commonwealth of Pennsylvania, after appraisal on the premises of the owner and after the carcass has been destroyed and disposed of

in accordance with section 20, Act of July 22, 1913, P. L. 928, according to affidavits submitted, but not under supervision of a Bureau of Animal Industry agent?

The answer to this inquiry is included in the answer to the preceding question. Section 20 relates to the carcasses and not to animals directed to be killed to prevent the spread of disease.

Therefore, you are advised that no payment can be made of any indemnity for the carcass of such animal.

4. Can indemnity be paid for tubercular reactors which die a natural death through no act of the Commonwealth of Pennsylvania, after appraisal on the premises of the owner and after the carcass has been destroyed and disposed of in accordance with section 20 of the Act of July 22, 1913, P. L. 928, under supervision of a Bureau of Animal Industry agent?

Again, we make answer that section 20 relates to the destruction or disposition of the carcasses of animals to prevent the spread of disease, and even if supervision of the carcass is attended by the Bureau of Animal Industry, it would not render the Commonwealth liable to payment of the indemnity.

5. Can indemnity be paid for tubercular reactors which die after appraisal and after leaving the premises of the owner, enroute for slaughter, on a permit issued by an agent of the Bureau of Animal Industry and disposed of under supervision of an agent of the Federal or State Bureau of Animal Industry?

This inquiry is answered by section 2 of the Act of 1931, supra:

"The Commonwealth hereby agrees to compensate owners of domestic animals slaughtered to prevent the spread of disease. . . ."

The animal was enroute to be slaughtered, but died before being slaughtered. Consequently, no liability attaches to the Commonwealth unless the animal is actually slaughtered as provided by the statute. Therefore, you are advised that in this case also the Commonwealth is not liable for indemnity.

From C. P. Addams, Harrisburg, Pa.